**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|                                  |   |                        |
|----------------------------------|---|------------------------|
| ALLSTATE INSURANCE COMPANY       | : |                        |
|                                  | : |                        |
| v.                               | : | Civil No. CCB-11-1846  |
|                                  | : |                        |
| JENNIFER WARNS                   | : |                        |

## MEMORANDUM

Allstate Insurance Company ("Allstate") has filed suit against its former employee, Jennifer Warns ("Ms. Warns"), a claims adjuster who left the company and subsequently began working for a plaintiffs' law firm with litigation pending against Allstate's insureds. The complaint includes claims for breach of fiduciary duty and breach of contract and requests both monetary damages and injunctive relief. Allstate has filed a motion for a preliminary injunction and motions to file pleadings under seal and to seal portions of Ms. Warns's pleadings. Ms. Warns has filed a motion to dismiss or for summary judgment. A hearing was held on the motions on January 5, 2012. For the following reasons, the pending motions to dismiss or for summary judgment will be granted as to any claims for punitive damages and denied as to all other claims. The motion for a preliminary injunction and the motions to seal will be denied.

## BACKGROUND

Jennifer Warns worked as a claims adjuster for thirty-three years at Allstate, from February 1977 to July 2010. For at least the last five years of her employment, Ms. Warns

handled only claims alleging harms from the ingestion of lead paint.  Ms. Warns is not an attorney, but her responsibilities as a claims adjuster involved significant attention to legal matters.  Her job required constant communication with Allstate's attorneys, residential landlords insured by Allstate, and outside defense counsel hired by Allstate to defend its insureds.  According to Allstate, Ms. Warns served as "a conduit for confidential information requested by counsel," and "Allstate and its insureds had an expectation of confidentiality with respect to these communications."  (Compl. ¶ 2.)

Ms. Warns submitted her resignation to Allstate on June 9, 2010.  The company contends Ms. Warns misled her supervisor and colleagues by telling them she was "leaving for personal reasons involving an ongoing contentious divorce."  (*Id.* at ¶ 51.)  Ms. Warns's final day at Allstate was July 2, 2010.  A month later she began working for Bennett & Albright, a plaintiff-side law firm that specializes in lead paint cases and had thirty-one outstanding cases against Allstate insureds when Ms. Warns resigned.

Allstate alleges its managers had confronted Ms. Warns about inappropriate behavior before she resigned.  In July 2009, Ms. Warns hosted a party at her home and invited plaintiffs' attorney David Albright and other members of the plaintiffs' bar to attend.  At the time, Mr. Albright and his firm were adverse to Allstate in many lead paint cases, including cases Ms. Warns was personally handling as a claims adjuster.  In response, Allstate managers met with Ms. Warns and counseled her not to repeat the event.  At the meeting, managers highlighted the company's Code of Ethics, which includes a "prohibition on actions that can give the appearance of wrongdoing."  (*Id.* at ¶ 39.)  In addition, Allstate alleges, Ms. Warns received flowers, gifts and cards from David Albright during her employment with Allstate, but she did not bring these

gifts to the attention of her Allstate managers as required by the Code of Ethics.

Allstate accuses Ms. Warns of removing confidential documents from the company before she left.  Allstate alleges it had permitted Ms. Warns to keep irregular hours, and as a result she had access to files after normal business hours while alone in the office.  According to the complaint, Ms. Warns maintained files on each Allstate insured for which she was responsible.  The files contained lists of the properties owned by each insured, the insurance coverage on each property, lead paint violation notices, and other information about lead paint testing on the properties.  Allstate inventoried those files after Ms. Warns resigned and the company contends a file could not be found for Stanley Rochkind, a landlord for whom Ms. Warns had been handling a large number of claims.

Allstate further alleges that materials distributed at a "confidential and privileged" lead paint litigation strategy meeting were also missing from Ms. Warns's files after her resignation. (*Id.* at ¶ 69.)  On March 19, 2008, Ms. Warns had attended the meeting at the offices of one of the law firms defending Allstate's insureds.  At the meeting, expert consultant Patrick Connor distributed an "instruction manual" to attendees.  (*Id.* at ¶ 60.)  Allstate alleges that after Ms. Warns resigned, she appeared with David Albright at an October 2010 lead paint trial against the Housing Authority of Baltimore, a governmental entity not insured by Allstate.  At the trial, Mr. Connor testified as an expert witness and Mr. Albright cross-examined him about the lead paint defense strategy meeting that Ms. Warns had attended.  During the cross-examination, Mr. Albright used "what appeared to be a copy of [the] instruction manual" from the strategy meeting.  (*Id.*)  During the trial, Ms. Warns allegedly "conferred orally with Mr. Albright, passed him notes while he was at counsel's table, and appeared to be accompanying the plaintiffs and

witnesses to court."  (*Id.* at ¶ 59.)

On December 9, 2010, Allstate's counsel sent Ms. Warns a "cease and desist" letter.  The letter demanded that she refrain from disclosing any information she learned, or documents she acquired, while working on lead paint cases for Allstate.  Ms. Warns responded immediately by letter, asserting that she had not "disclosed any confidential information that would violate any fiduciary or ethical duties" and that she had no confidential documents to return to Allstate.  (*Id.* at ¶ 77.)

On July 5, 2011, Allstate filed the instant lawsuit against Ms. Warns.  In addition to the above factual allegations, the complaint contends the number of lead paint cases filed by Bennett & Albright against Allstate insureds has increased "dramatically" since Ms. Warns's resignation. (*Id.* at ¶ 3.)  According to the complaint, Bennett & Albright had thirty-one actions filed against Allstate's insureds at the time Ms. Warns left; in the following year the firm filed an additional sixty-eight.  (*Id.*)

Allstate's complaint alleges two causes of action.  First, it alleges Ms. Warns breached ongoing fiduciary duties she owes to Allstate.  Allstate contends the duty of an employee not to disclose an employer's confidential information survives the end of the employment relationship. The complaint alleges Ms. Warns has breached these fiduciary duties "with recklessness or wanton disregard for the consequences."  (*Id.* at ¶ 96.)   Second, the complaint alleges a breach of contract based on the language in the Allstate Code of Ethics, a document that is a "condition of employment" for Allstate employees.  (*Id.* at ¶¶ 35, 107.)   Among other requirements, the Code of Ethics contains the following language:

> You may not appropriate for your own benefit information in which Allstate has a
> proprietary interest.  You or another person may not derive personal benefit from

4

confidential or 'inside information' that you obtained in the course of your work.

(*Id.* at ¶ 36.)  Allstate alleges Ms. Warns has breached "her contractual obligations" under the Code of Ethics by "misappropriating the Company's and its insureds' confidential . . . information and by disclosing this information to third parties."  (*Id.* at ¶ 107.)  To the extent breaches of fiduciary duty and of contract have not yet occurred, Allstate contends in the alternative that Ms. Warns's employment with a lead paint plaintiff law firm creates a significant risk the breaches will occur at some point, either "knowingly or inadvertently."  (*Id.* at ¶¶ 92, 109.)

Allstate requests compensatory and punitive damages.  It also contends Ms. Warns's disclosure of confidential information would cause the company irreparable harm by compromising Allstate's ability to defend its insureds in ongoing litigation and exposing Allstate and its insureds to new lead paint ingestion claims and lawsuits.  To protect against these outcomes, Allstate requests broad injunctive relief against Ms. Warns.  The company asks this court to immediately (1) enjoin Ms. Warns from disclosing confidential, privileged, or proprietary information of Allstate or its insureds, (2) order Ms. Warns to return to Allstate all documents in her possession and to account to Allstate for all information disclosed to plaintiff's attorneys, and (3) order Ms. Warns to cease and desist from working for Bennett & Albright or any other attorney representing plaintiffs in lead paint litigation.

On the same day Allstate filed its complaint, the company also filed a motion for a preliminary injunction and supporting documents.  Allstate attached affidavits from Michael Kevin Barry, Ms. Warns's direct supervisor; Melinda Tayson, another Allstate claims adjuster who worked with Ms. Warns on lead paint cases; and Benjamin Kirson, a real estate investor and

landlord who is an insured of Allstate and whose claims were overseen by Ms. Warns.  The company also included a copy of the "cease and desist" letter it sent to Ms. Warns and of her written response.

In addition to filing the complaint and motion for a preliminary injunction, Allstate also moved the same day to file certain pleadings and exhibits under seal in order to protect privileged attorney-client communications and confidential business information included in the pleadings and supporting documents.

On August 10, 2011, Ms. Warns filed a motion to dismiss or for summary judgment.  She also filed a response brief in opposition to Allstate's motion for a preliminary injunction, attaching a declaration in which she categorically denies all of Allstate's accusations.  Ms. Warns flatly denies removing or copying any documents that contained confidential, proprietary, or privileged information.  She also denies revealing any information about Allstate's legal strategies or its insureds' properties to Bennett & Albright or to any other person.  She states that she did not believe she learned any privileged information during her employment at Allstate, and "[if she] learned any confidential or proprietary information, [she was] not aware of it." (Warns Decl. ¶ 57.)  She describes her work at Bennett & Albright, where she allegedly performs tasks for the firm "only on cases in which [Allstate] does not provide insurance Coverage for the defendant."  (*Id*. at ¶ 38.)

In addition, Ms. Warns's declaration attempts to address Allstate's more specific allegations.  Presumably to explain the accusation of the alleged missing Rochkind file, Ms. Warns describes how "[b]efore leaving Allstate" she discarded a file folder containing violation notices from the health department for all Baltimore city landlords, "including Mr. Rochkind."

(*Id.* at ¶ 18.)  Similarly, Ms. Warns denies having taken any of the handouts available at the lead paint defense strategy meeting at which Mr. Connor spoke.  In the lengthy declaration, she goes on to discuss, give context for, or otherwise attempt to rebut accusations regarding the party to which she invited Mr. Albright, the alleged gifts she received from him, and other similar allegations by Allstate's declarants.

Allstate filed its reply brief on August 29, 2011, attaching nearly two dozen exhibits.  The exhibits include various heavily redacted communications to Ms. Warns from counsel hired by Allstate to represent its insureds.  The communications, Allstate alleges, prove Ms. Warns *did* have access to confidential and privileged information during her employment at Allstate.  Allstate accompanied the reply brief and attachments with a second motion to seal, and the company subsequently moved to seal portions of Ms. Warns's declaration as well.

On September 15, 2011, Ms. Warns filed a reply brief regarding the motion for a preliminary injunction, and the next day she filed a request for a hearing on the motion.  On October 11, 2011, the court temporarily granted Allstate's motion to seal, pending a further ruling on the issue.  On January 5, 2012, the court held a motions hearing on both Allstate's motion for a preliminary injunction and Ms. Warns's motion to dismiss or for summary judgment.

Now pending before the court are (1) Ms. Warns's motion to dismiss or for summary judgment, (2) Allstate's motion for a preliminary injunction, and (3) Allstate's motions to seal.

**<u>DISCUSSION</u>**

7

### A.  Motion to Dismiss

Ms. Warns has moved to dismiss Allstate's suit pursuant to Fed R. Civ. P. 12(b)(6).  She argues Allstate has failed to articulate a viable legal duty that would prohibit her from working for Bennett & Albright, and she argues Allstate has failed to plead with requisite specificity what confidential, proprietary, or privileged information is at issue.  In any case, she argues, punitive damages are inappropriate.  For the following reasons, the motion to dismiss will be granted as to punitive damages, but otherwise denied.

A Rule 12(b)(6) motion tests the sufficiency of a complaint and does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff."  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  However, the court "need not accept the legal conclusions drawn from the facts, and [] need not accept as true unwarranted inferences, unreasonable conclusions or arguments."  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

To survive a motion to dismiss, the factual allegations of a complaint, assumed to be true, "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  The plaintiff's obligation is to *show* sufficiently the "grounds of his entitlement to relief," offering "more than labels and conclusions."  *Id.*  It is not

sufficient that the well-pleaded facts suggest "the mere possibility of misconduct."  *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1950 (2009).  Rather, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning the court could draw "the reasonable inference that the defendant is liable for the conduct alleged." *Id*. at 1949 (internal quotations and citation omitted).

A party moving to dismiss a complaint under Rule 12(b)(6) is "asserting, in effect, that the plaintiff is not entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 709 (4th Cir. 2007) (citations and alterations omitted).  Allstate contends there are two legal theories under which the company is entitled relief: breach of fiduciary duty and breach of contract.  The court considers each in turn.

### 1.  Breach of Fiduciary Duty

In Maryland, "there is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries."  *Kann v. Kann*, 690 A.2d 509, 521 (Md. 1997).  However, "[t]his does not mean that there is no claim or cause of action available for breach of fiduciary duty." *Id*.  Rather, counsel must "identify the particular fiduciary relationship involved, identify how it was breached, consider the remedies available and select those remedies appropriate to their client's problem."  *BEP, Inc. v. Atkinson*, 174 F. Supp. 2d 400, 405 (D. Md. 2001) (citing *Kann*, 690 A.2d at 521).

In identifying the particular fiduciary duty involved, Allstate directs the court's attention to the Restatement (Second) of Agency, which describes a common law fiduciary duty of agents

not to disclose confidential information of the principal.  According to the Restatement,

> [u]nless otherwise agreed, an agent is subject to a duty to the principal not to use or to communicate information confidentially given him by the principal or acquired by him during the course of or on account of his agency or in violation of his duties as agent, in competition with or to the injury of the principal, on his own account or on behalf of another, although such information does not relate to the transaction in which he is then employed, unless the information is a matter of general knowledge.

Restatement (Second) of Agency § 395 (1958).  This fiduciary duty of nondisclosure may survive the end of the employment relationship.

> Unless otherwise agreed, *after the termination of the agency*, the agent:
> . . .
> (b) has a duty to the principal not to use or to disclose to third persons, on his own account or on account of others, in competition with the principal or to his injury, trade secrets, written lists of names, or other similar confidential matters given to him only for the principal's use or acquired by the agent in violation of duty. . . .

*Id.* at § 396 (emphasis added).

While language appearing in a restatement of the law does not necessarily describe the current state of the law in Maryland, the Maryland Court of Special Appeals has acknowledged the Restatement (Second) of Agency §396(b) supports a "general rule" that "a former employee is obligated not to disclose or use the confidential information acquired during his employment." *Bond v. PolyCycle*, 732 A.2d 970, 977 (Md. App. 1999); *see also Md. Metals, Inc. v. Metzner*, 382 A.2d 564, 568 (Md. 1978) ("Once the employment relationship comes to an end, of course, the employee is at liberty to solicit his former employer's business and employees, subject to certain restrictions concerning the misuse of his former employer's trade secrets and confidential information.").  And, where the information involved is protected by attorney-client privilege, this court has relied on sections 395 and 396 of the Restatement (Second) of Agency as a justification for extending the no-contact rule of legal ethics to include former employees who

have been "*extensively* exposed to confidential information." *Camden v. Maryland*, 910 F. Supp. 1115, 1122 (D. Md. 1996) (emphasis in original) (disqualifying attorneys who had extensive *ex parte* contact with the former employee previously the point of contact for a litigation adversary).

While none of the above cases expressly creates an independent cause of action for a breach of the duty not to misappropriate or disclose confidential information after the termination of the employment relationship, the weight of authority in both Maryland and other states suggests such a cause of action may lie. *See, e.g., NCH Corp. v. Broyles*, 749 F.2d 247, 254 (5th Cir. 1985) ("Even in the absence of a contract not to disclose confidential information, an agent has a duty . . . after the termination of the agency not to use or to disclose . . . trade secrets . . . or other similar confidential matters . . . .") (internal quotation marks and citations omitted); *Nucor Corp. v. Tenn. Forging Steel Serv., Inc.*, 476 F.2d 386, 392 (8th Cir. 1973) (finding an implied duty for former employees not to disclose confidential information, even where the information does not rise to the level of a trade secret); *Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co.*, 191 F. Supp. 2d 652, 661–62 (E.D. Va. 2002) (finding a claim for breach of fiduciary duty for disclosure of confidential information may be brought in addition to a breach of contract claim, as long as the claim is independent); *Inflight Newspapers, Inc. v. Magazines In-Flight, LLC*, 990 F. Supp. 119, 137 (E.D.N.Y. 1997) ("[A]n employee's use of an employer's trade secrets or confidential customer information can be enjoined even in the absence of a restrictive covenant when such conduct violates a fiduciary duty owed by the former employee to his former employer."); *Coulter Corp. v. Leinert*, 869 F. Supp. 732, 735 & n.2 (E.D. Mo. 1994) (finding a common law cause of action exists for disclosure of confidential

11

information even after the end of the employment relationship).

While a separate cause of action for breach of fiduciary duty may exist, it does not necessarily follow that both equitable and monetary relief will be available.  *Kann*, 690 A.2d at 519 ("For some breaches the remedy may be at law, for others it may be exclusively in equity, and for still others there may be concurrent remedies.")  In the aftermath of *Kann*, Maryland courts have limited independent causes of action for breach of fiduciary duty to those seeking equitable relief.  *See Wasserman & Wasserman Goldsten Family LLC v. Kay*, 14 A.3d 1193, 1219 (Md. App. 2011) (listing cases).  Where a plaintiff seeks monetary damages at law, "an alleged breach of fiduciary duty may give rise to a cause of action," such as a breach of contract, negligence or fraud action, "but it does not, standing alone, constitute a cause of action."  *Id.* Thus, as a result of a successful common law breach of fiduciary duty claim, Allstate may be given the injunctive relief it seeks.  Punitive damages, however, will not be available, *see Kann*, 690 A.2d at 519, and any claim for compensatory damages will have to be supported by a successful breach of contract action.  *See Wasserman*, 14 A.3d at 1219.

In deciding an independent cause of action for equitable relief exists, the court does not at this time address the relationship between the Maryland Uniform Trade Secrets Act (MUTSA) and common law breach of fiduciary duty claims.  The MUTSA preempts at least some common law claims for breach of fiduciary duty, as it is the "exclusive remedy for civil claims based on misappropriation of trade secrets."  *Bond*, 732 A.2d at 976 n.2; Md. Code Ann., Com. Law § 11–1207 (1989).[1]  While Allstate does not contend any of the information at issue in this case would

---

[1] Section 11-1207 states, in pertinent part:

(a) Except as provided in subsection (b) of this section, this subtitle displaces conflicting tort, restitutionary, and other law of this State providing civil remedies

constitute trade secrets, several courts have found Uniform Trade Secrets Act statutes to preempt or abrogate *any* common law claim based on the disclosure or misappropriation of confidential business information—whether or not the information rises to the level of a trade secret.  *See, e.g., Firetrace USA, LLC v. Jesclard*, 800 F. Supp. 2d 1042, 1047–48 (D. Ariz. 2010) (agreeing with the "majority interpretation" that "the UTSA preempts all common law tort claims based on misappropriation of information, whether or not it meets the statutory definition of a trade secret").  *But see Burbank Grease Servs., LLC v. Sokolowski*, 717 N.W.2d 781, 798 (Wis. 2006) (applying rules of statutory construction to conclude Wisconsin UTSA does not preclude remedies for misappropriation of confidential information falling outside the definition of a trade secret); *Stone Castle Fin.*, 191 F. Supp. 2d at 659 (holding "unless it can be clearly discerned that the information in question constitutes a trade secret, the Court cannot dismiss alternative theories of relief as preempted by the [Virginia UTSA]").  The parties did not address MUTSA preemption in their briefs before this court, and the Maryland Court of Appeals has not yet spoken on this issue.[2]  Accordingly, the court declines to decide the scope of MUTSA preemption at this preliminary stage of the litigation.

---

for misappropriation of a trade secret.

(b)(1) This subtitle does not affect:

(i) Contractual remedies, whether or not based upon misappropriation of a trade secret;

(ii) Other civil remedies that are not based upon misappropriation of a trade secret..."

Md. Code Ann, Com. Law §11-1207.

[2] The scope of MUTSA preemption of actions regarding disclosure of information other than trade secrets has only been addressed obliquely, and in the context of a breach of confidential relationship claim, by the District Court of Maryland. *See Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 801–02 (D. Md. 2002) (holding that no independent breach of fiduciary duty claim exists, but allowing a claim for breach of a confidential relationship to survive MUTSA preemption).

Neither does the court at this time determine whether the specific information at issue here is "confidential."  Allstate alleges Ms. Warns had access during her tenure with Allstate to various types of information which, under certain conditions, may be considered confidential. Allstate alleges Ms. Warns had access to attorney-client privileged material, which the Restatement of Agency considers "confidential."  Restatement (Third) of Agency §8.05 cmt. c (2006) (citing Restatement (Third) of  Law Governing Lawyers § 59 (2000)).  Allstate also alleges Ms. Warns kept files of "highly confidential and proprietary lists of the properties owned by Allstate's insureds." (Compl. ¶ 30.)  List of customers may be considered confidential and even a trade secret.  *Home Paramount Pest Control Cos. v. FMC Corp. / Agric. Prods. Grp.*, 107 F. Supp. 2d 684, 692–93 (D. Md. 2000); Restatement (Second) Agency § 396(b) ("[A]fter termination of the agency, the agent . . . has a duty to the principal not to use or disclose . . . trade secrets, written lists of names, or other similar confidential matters . . . .").  However, not all customer lists or other similar documents are necessarily confidential or a trade secret.  *Dworkin v. Blumenthal*, 551 A.2d 947, 950 (Md. App. 1989) (finding a patient list at a dentist office did not constitute a trade secret).  The determination "is a conclusion of law based upon the applicable facts," *id.*, and thus more appropriately decided at summary judgment, at least in this case.

Finally, this court does not now address any potential public policy exceptions to an independent cause of action for breach of fiduciary duty of confidentiality.  As the Restatement (Third) of Agency notes, "[a]n agent's duty of confidentiality is not absolute. An agent may reveal otherwise privileged information to protect a superior interest of the agent or a third party."  Restatement (Third) of Agency § 8.05 cmt. c.  This exception may encompass, for

example, notice to law-enforcement authorities that the principal is committing or is about to commit a crime, or notice to "a private party who is being or will be harmed by the principal's illegal conduct." *Id.*

Whether Allstate's tort claim advances under the common law of agency or MUTSA, Allstate has alleged sufficient facts to make a plausible claim of the existence of a fiduciary duty of confidentiality for former employees and of a breach of that duty by Ms. Warns.  While the complaint does not provide *direct* evidence to support the allegation Ms. Warns disclosed confidential information to Bennett & Albright, the complaint alleges the existence of circumstantial evidence with sufficient specificity to survive the motion to dismiss threshold of *Twombly* and *Iqbal*.  Allstate names specific insureds with whom Ms. Warns worked (*id.* at ¶ 20), and specific types of activities Ms. Warns carried out for these and other insureds.  (*Id.* at ¶¶ 22, 25.)  The complaint discusses specific documents, including the alleged Rochkind file, containing lists of insured properties, which may be considered the equivalent of customer lists and therefore may be considered confidential.  Allstate alleges with specificity the documents it believes Ms. Warns misappropriated, including the Rochkind file and the Connor memorandum. Finally, Allstate provides specific factual allegations supporting its concern that Ms. Warns may already have disclosed information like the Rochkind file and the Connor memorandum to Bennett & Albright—including both Mr. Albright's alleged access to the Connor memorandum and the alleged dramatic increase in filings by Bennett & Albright against Allstate insureds.

Ms. Warns argues vigorously in her declaration that the information to which she had access was not confidential and, even if it was, she has not disclosed any of it.  Ms. Warns contends lists of the properties owned by Allstate's insureds are not confidential, because this

information can be discovered by accessing property records online with the City of Baltimore. And she contends lead paint notices are issued by government agencies, are in the public record, and are therefore not confidential. *Cf. Md. Metals*, 382 A.2d at 572 (noting the use of information "generally available to the public through trade and government publications" cannot be the basis for a breach of fiduciary duty claim); *Inflight Newspapers*, 990 F. Supp. at 129 (finding customer lists not entitled to trade secret protection because their identity "could be easily ascertained through the use of the . . . Internet . . . .").

Likewise, there may be other reasons why the number of cases brought by Bennett & Albright against Allstate's insureds increased dramatically after Ms. Warns's resignation. At the motions hearing, counsel for Ms. Warns suggested the total of Bennett & Albright claims against all parties, not just Allstate insureds, may have increased; or that overall lead paint claims by all plaintiff firms may be rising because of record jury verdicts and increased publicity.[3] It may also be possible that the use of information not in fact confidential may have led to the increase, such as might be the case if this court determines the list of properties insured by Allstate is not confidential.

Ms. Warns' arguments and alternative explanations, however, are properly weighed at the summary judgment phase or at trial, when they have been supported by evidence in the record. At the present juncture, the factual allegation of the increase in filings by Bennett & Albright against Allstate's insureds is sufficient to nudge Allstate's claims across the plausibility threshold of *Twombly* and *Iqbal*.

---

[3] Counsel for Allstate denied either of these explanations are true and rightly pointed out that Ms. Warns should have attempted to provide appropriate support for these arguments in her pleadings.

### 2. **Breach of Contract**

Under Maryland law, the elements of a breach of contract claim are (1) a contractual obligation and (2) a material breach of that obligation. *See Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). To survive a motion to dismiss, therefore, "a complaint for breach of contract must allege facts showing a contractual obligation . . . and a breach of that obligation." *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 791 (D. Md. 2002). Allstate contends Ms. Warns's contractual obligations arise from the Allstate Code of Ethics, a declaration of company policy Ms. Warns "was required to abide by as a condition of [] employment." (Compl. ¶ 35.)

The Code of Ethics is referenced on multiple occasions in Allstate's complaint and was attached, presumably in its entirety, to Allstate's motion for a preliminary injunction. The most relevant language cited reads:

> You may not appropriate for your own personal benefit information in which Allstate has a proprietary interest. You or another person may not derive personal benefit from confidential or 'inside information' that you obtained in the course of your work.

(Compl. ¶ 36; Code of Ethics, ECF No. 3 Ex. A, at 3.) Allstate alleges, on information and belief, that Ms. Warns has violated this language. To support this assertion, the company incorporates the same factual allegations underlying its claim for breach of fiduciary duty, including the alleged missing Rochkind file, Ms. Warns's appearances assisting Mr. Albright in court, and the increase in cases filed against Allstate's insureds by Bennett & Albright.

These factual allegations are sufficient to support the allegation of a breach of a contract, if a contract exists. Whether Allstate has adequately alleged the existence of the contractual obligations themselves, however, is more complicated. Allstate asserts Ms. Warns was required

to abide by the Code of Ethics as a condition of her employment, but the company does not contend Ms. Warns signed the document, nor that she signed any other noncompete or nondisclosure agreement. *Cf. Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 915 (4th Cir. 1997) (upholding injunctive relief for a breach of confidentiality claim where former employee had signed two nondisclosure agreements). Nor does Allstate allege it expressly incorporated the Code of Ethics into any other written agreement. *Cf. Szot v. Allstate Ins. Co.*, 161 F. Supp. 2d 596, 600–01 (D. Md. 2001) (concluding Allstate's termination and disciplinary standards were incorporated into the plaintiff's employment agreement where the agreement expressly stated she was terminable at will "in accordance with Company rules and procedures"). In fact, at this point there is no information in the record at all about any written contract between Allstate and Ms. Warns.

Allstate's failure to allege incorporation of the Code of Ethics into a signed or written agreement is not necessarily fatal to its breach of contract claim, however. Even where a corporate policy document like an employee handbook is not incorporated in any written agreement, the document may still under certain circumstances create contractual obligations. Employer policy directives may "become contractual obligations when, with knowledge of their existence, employees start or continue to work for the employer." *Dahl v. Brunswick Corp.*, 356 A.2d 221, 224 (Md. 1976)); *see also Staggs v. Blue Cross of Md., Inc.*, 486 A.2d 798, 803 (Md. App. 1985) (holding provisions in an employee handbook could "limit the employer's discretion to terminate an indefinite employment or . . . set forth a required procedure for termination of such employment"). At least where employees have proper knowledge of it, a policy directive thus can function as "an offer of a unilateral contract which the employees accept[] by

18

continuing to work . . . in reliance on it." *Dahl*, 356 A.2d at 231.

That said, the Maryland Court of Special Appeals has "caution[ed] that not every statement made in a personnel handbook or other publication will rise to the level of an enforceable covenant." *Staggs*, 486 A.2d. at 804.  Indeed, "general statements of policy are no more than that and do not meet the contractual requirements for an offer." *Id.* (internal quotation marks and citation omitted).   In addition, where policy documents contain unambiguous language disclaiming the creation of any contractual obligation, no obligation is created. *Castiglione v. Johns Hopkins Hosp.*, 517 A.2d 786, 793–94 (Md. App. 1986).

Here, for the purpose of surviving a motion to dismiss, Allstate has adequately alleged a contractual obligation.  Allstate has alleged its managers "highlighted aspects of the Code of Ethics" during a July 14, 2009, meeting with Ms. Warns (Compl. ¶ 39), giving her "reasonable notice" of the language at issue here.  *See Elliott v. Bd. of Trs. of Montgomery Cnty. Cmty. Coll.*, 655 A.2d 46, 51 (Md. App. 1995).  The provisions of the Code of Ethics cited in the complaint are "capable of objective application in discrete cases" and therefore are "employee specific" and not simply general statements of policy.  *See MacGill v. Blue Cross of Md., Inc.*, 551 A.2d 501, 503–04 (Md. App. 1989).   And, there is no indication in the complaint of any disclaimer language in the Code of Ethics.  Thus, at least for the purpose of considering the motion to dismiss, the court finds it plausible that the Code of Ethics could be considered "an offer of a unilateral contract," *Dahl*, 356 A.2d at 231, accepted by Ms. Warns through her continued service with the company.

While the complaint alleges a contractual obligation sufficiently to survive a motion to dismiss, the court does not now hold a contractual obligation necessarily existed.  Additional

information about how and in what context the Code of Ethics was presented to Ms. Warns may

be relevant to this ultimate determination.  For example, if the Code of Ethics was presented to

employees as a part of a larger packet of information, disclaimers included therein could raise

questions about the enforceability of provisions of the Code of Ethics.  *Cf. Haselrig v. Pub.*

*Storage, Inc.*, 585 A.2d 294, 300–01 (1991) (finding location of disclaimer may be relevant to

enforceability).[4]  Such information presumably can be obtained through discovery.

Discovery may also be relevant to a determination of the scope of the purported

contractual obligations and the remedies available.  At best, the plain language of the Code of

Ethics is ambiguous on both counts.  Counsel for Allstate acknowledged at the motions hearing

that the Code of Ethics lacks any language expressly applying its provisions to former

employees.  Nonetheless, Allstate contends the contractual obligations *do* survive the end of the

employment relationship.  Likewise, the company requests remedies of both civil liability and

injunctive relief, but neither remedy is specified in the Code of Ethics as a consequence of a

violation.   (ECF No. 3, Ex. A, at 1) ("Violations of this Code of Ethics may result in discipline

up to and including termination of employment or referral for criminal prosecution.").

Where a contract is ambiguous, "the court must consider any extrinsic evidence which

sheds light on the intentions of the parties at the time of the execution of the contract." *Heat &*

*Power Corp. v. Air Prods. & Chems., Inc.*, 578 A.2d 1202, 1208 (Md. 1990).   Such a

---

[4] Similarly, the context may also speak to a more fundamental question about the *Staggs* doctrine. Another judge in this district has questioned whether the *Staggs* doctrine applies at all to language in an employee handbook that "*enlarges* the employer's rights." *Perrici v. Sys. Assessment & Research, Inc.*, No. 11–0083, 2011 WL 5974605 *5 n.9 (D. Md. Nov. 28, 2011) (emphasis in original).  And, while Allstate has presented the court with several cases in which policy documents create contractual obligations to limit an employer's at-will termination, Allstate has not directed the court's attention to any cases where language in an employee handbook or policy directive has served instead to enlarge employer's rights.  Any relevant legal distinction, however, will depend on facts not yet in the record, such as the extent to which other Allstate policy documents created or distributed in tandem with the Code of Ethics enlarge employee rights or incorporate the Code of Ethics into a contractually obligated disciplinary or pre-termination procedure.  Thus the court need not yet address this question.

determination is properly made on a more robust record than the one now in front of the court. Thus, while Ms. Warns's motion to dismiss will be denied, the court withholds further judgment as to the existence and extent of any contractual obligations created by the Code of Ethics.

### 3.  Punitive Damages:

Allstate contends its claim for punitive damages survives Ms. Warns's motion to dismiss because the company has sufficiently alleged facts that would support a finding of "actual malice" on the part of Ms. Warns.  However, punitive damages are not available in a breach of contract action.  *Wasserman*, 14 A.3d at 1222.  "It is well settled in Maryland that punitive damages cannot be awarded in a pure breach of contract case, although they are recoverable in tort actions arising out of contractual relationships where actual malice is present." *Sims v. Ryland Grp., Inc.*, 378 A.2d 1, 4 (Md. App. 1977).  But the only tort action Allstate has alleged is the action for breach of fiduciary duty, and, as discussed above, punitive damages are not available in an independent cause of action for breach of fiduciary duty.  Thus, the court must dismiss Allstate's punitive damages claim.


### B.  Summary Judgment

In the alternative, and on the basis of her declaration, Ms. Warns requests the court grant summary judgment in her favor pursuant to Fed. R. Civ. P. 56.  This request is premature. Federal Rule of Civil Procedure 56(c) provides summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  But, "[g]enerally speaking, 'summary judgment [must] be

refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'"  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). Discovery has not begun in this case.  And while Allstate has produced a significant amount of material on its own behalf, it has not yet had the opportunity to depose Ms. Warns or submit interrogatories.  Allstate has specified the information it needs through discovery, including, for example, "the protocols and procedures in place [at Bennett & Albright] to prevent Warns from revealing confidential, proprietary, or privileged information."  (ECF No. 20, at 19.)  And, as discussed above, discovery also may aid the court in determining the scope of any contractual obligations and whether certain information at issue is in fact confidential or a trade secret.  Ms. Warns's motion for summary judgment will therefore be denied without prejudice.

### C.  Motion for a Preliminary Injunction

Allstate requests immediate equitable relief in the form of a preliminary injunction.  To prevent disclosures of the confidences of Allstate and its insureds, the company requests the court (1) temporarily restrain Ms. Warns from disclosing any information, including privileged and confidential information, she learned while working with Allstate; (2) order Ms. Warns to immediately return to Allstate all copies of documents she obtained or removed from Allstate, and to account to Allstate for all information disclosed to plaintiffs' lead paint litigation attorneys; and (3) order Ms. Warns to immediately cease from assisting the plaintiffs' bar in connection with lead paint litigation.

The standard for awarding preliminary injunctive relief is governed by *Winter v. Natural*

*Resources Defense Counsel, Inc.*, 555 U.S. 7, 20 (2008). A plaintiff seeking a preliminary injunction must establish (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Id.*; *see also WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009).

Allstate misstates the proper standard for the likelihood of success on the merits, citing *Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977).  Under *Blackwelder*, the court employed a balancing approach in which there is a "'flexible interplay' among all the factors considered . . . for all four [factors] are intertwined and each affects in degree all the others." 550 F.2d at 196 (internal citation omitted).  Thus, according to Allstate, the company "need not show a likelihood of success."  (ECF No. 3, at 14) (citing *Blackwelder*, 550 F.2d at 196).  Rather, "it is enough that grave or serious questions on the merits are presented." (*Id.*)

But in the wake of the Supreme Court decision in *Winter*, the *Blackwelder* balancing approach "may no longer be applied in granting or denying preliminary injunctions in the Fourth Circuit." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009), *vacated on other grounds*, 130 S. Ct. 2371 (2010) *and adhered to in part sub nom. Real Truth About Obama, Inc. v. F.E.C.*, 607 F.3d 355 (4th Cir. 2010); *Montgomery v. Hous. Auth. of Baltimore City*, 731 F. Supp. 2d 439, 442 n.3 (D. Md. 2010).  Instead, the Fourth Circuit has held a party seeking the preliminary injunction must demonstrate by "a *clear showing* that it is *likely* to succeed at trial on the merits." *Real Truth About Obama*, 575 F.3d at 351 (emphasis in original).  The Fourth Circuit has not expressly required a movant to prove success on the merits

23

is "more likely than not" in order to meet the requirement of a clear showing of likelihood of success on the merits.[5]   But, at least, the requirement "is far stricter than the *Blackwelder* requirement that the plaintiff demonstrate only a grave or serious question for litigation." *Id.* at 345–46.

While Allstate misstates the appropriate standard, the company nonetheless contends it has made a "strong showing of likelihood of success on the merits."  (ECF No. 3, at 21–22.)  The court cannot agree.    For the reasons stated above, the court finds Allstate has met its burden of providing sufficient factual allegations to meet the 12(b)(6) standard of *Twombly* and *Iqbal*.  But the standard of plausibility under *Twombly* and *Iqbal* is not as rigorous as the standard of "likely to succeed on the merits" required under *Winter*.

The Fourth Circuit has cautioned that the plaintiff bears a "heavy burden in showing its likelihood of success" where the area of the law at issue is "difficult and complicated" and "still developing." *Real Truth About Obama*, 575 F.3d at 349.   Here, Allstate's request for relief requires this court to address several novel questions.  Maryland courts have not yet articulated an independent cause of action for breach of fiduciary duty of confidentiality for former employees, nor have the courts clearly determined the extent to which such a duty is pre-empted by the Maryland Uniform Trade Secrets Act.  Similarly, no Maryland court has held that an employee handbook or policy directive can function to create contractual obligations that enlarge

---

[5] Circuit courts are split on the question.  The Federal Circuit has held the *Winter* standard is the equivalent of finding that success on the merits is "more likely than not." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1379 (Fed. Cir. 2009).  The D.C. Circuit also interprets the stricter approach of the Fourth Circuit with regard to success on the merits as requiring a finding that success is more likely than not. *See Sherley v. Sebelius*, 644 F.3d 388, 398 (D.C. Cir. 2011) (discussing, but not necessarily agreeing with, the concurring opinion in *Davis v. Pension Benefit Guaranty Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009)).  On the other hand, the Second and the Ninth Circuits have rejected any interpretation of likelihood of success that would require a finding of "more likely than not." *See Leiva-Perez v. Holder*, 640 F.3d 962, 967 (9th Cir. 2011); *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 37 (2d Cir. 2010).

the rights of employers.  As discussed above, while Allstate has alleged sufficient facts to survive a 12(b)(6) motion to dismiss, it is inappropriate on the current record to attempt to address these important questions.

Not only are Allstate's legal theories novel, but the facts alleged in support of the theories are relatively sparse.  The core factual allegation supporting Allstate's claim is that Ms. Warns has already misappropriated and disclosed confidential information or that she intends to do so. This allegation, however, is made "on information and belief" and supported only by circumstantial evidence.

The sufficiency of factual evidence may be a factor in determining likelihood of success on the merits.  *See, e.g., Marshall Durbin Farms, Inc. v. Nat'l Farmers Org., Inc.*, 446 F.2d 353, 357 (5th Cir. 1971) ("[D]istrict courts have shown appropriate reluctance to issue [preliminary injunctions] where the moving party substantiates his side of a factual dispute on information and belief."); *Advocacy Org. For Patients & Providers v. Mercy Health Servs.,* 987 F. Supp. 967, 974 n.13 (E.D. Mich. 1997) (finding plaintiffs were not likely to succeed on the merits because, in part, plaintiffs' pleadings were "an amalgamation of 'information, knowledge and belief'"). *Cf. E.E. Maxwell Co. v. Arti Decor, Ltd.*, 638 F. Supp. 749, 753–54 (N.D. Tex. 1986) (finding affidavit statement on information and belief, while "statutorily satisfactory for attachment purposes," insufficient to demonstrate inadequate remedy at law).[6]

The cases cited by Allstate are not to the contrary.  To support its argument that Allstate

---

[6] This case law is particularly relevant in the instant case, given Allstate's request for an order to block Ms. Warns from working for Bennett & Albright or for any other attorney assisting lead paint plaintiffs.  Such an injunction could have the effect of a final judgment for Ms. Warns, and "an allegation made 'on information and belief' does 'not serve as a reliable foundation upon which to predicate a final judgment.'" *Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 543 (D. Md. 2011) (quoting *Oceanic Trading Corp. v. Vessel Diana*, 423 F.2d 1, 4–5 (2d Cir. 1970)).

is likely to prevail on the merits, Allstate relies primarily on *X Corp. v. John Doe*, 805 F. Supp. 1298, 1311 (E.D. Va. 1992).  In *X Corp.*, an employer sought a preliminary injunction against a former in-house counsel to prevent him from disclosing confidential information and to mandate return of specified documents.  Many of the core factual allegations in the case were uncontested.  When the defendant lawyer was hired, he had expressly executed a "Confidentiality Agreement," the validity and scope of which were unambiguous.  *Id.* at 1300. Critically, the *X Corp.* defendant admitted to having taken copies of the company's documents and files, which he planned to disclose to the federal government and the court as part of various legal actions.  *Id.* at 1301.  Thus, that the court eventually granted the preliminary injunction is hardly surprising.

More interesting is that the court did so while questioning whether X Corp. in fact was likely to succeed on the merits.  Because the *Blackwelder* standard applied, the plaintiff did not need to reach a "likelihood of success on the merits," but only needed to prove the merits of the litigation raised "grave and serious questions."  *Id.* at 1311.  While granting the injunction based on this latter standard, the court noted "the evidence on the merits appear[ed] to be in equipoise." *Id*.  If the *X Corp.* case had been heard today, in the wake of *Winter* and *Real Truth About Obama*, it is possible no preliminary injunction would have issued.

The other cases Allstate cites are similarly distinguishable and unhelpful to Allstate.  For example, Allstate cites *Zahodnick*, where the Fourth Circuit upheld a preliminary injunction. 135 F.3d at 915.  But there, the record clearly showed the defendant had (1) signed two non-disclosure agreements, (2) had retained confidential materials belonging to IBM, and (3) had forwarded those documents to his counsel without IBM's consent.  *Id.*  In *UBS PaineWebber,*

*Inc. v. Aiken*, 197 F. Supp. 2d 436 (W.D.N.C. 2002), the defendants admitted to having (1) signed a non-compete agreement, (2) physically removed information from their former employer, and (3) solicited clients of their former employer.  The facts were almost exactly the same in *Philips Elecs. N. Am. v. Hope*, 631 F. Supp. 2d 705 (M.D.N.C. 2009), as well as in the cases from outside of the Fourth Circuit and unpublished cases also cited.

Here, on the other hand, Ms. Warns did not sign any confidentiality or noncompete agreement.  And the language in the Code of Ethics is ambiguous at best with regard to contractual obligations following termination of the employment relationship.  Unlike the above cases, there is no direct evidence Ms. Warns has possession of documents containing confidential information or intends to use such information.  Allstate has not provided the court with any cases, published or unpublished, that support the imposition of a preliminary injunction on a similar set of facts.

While this court has found the combination of novel legal theories and circumstantial evidence sufficient to survive a 12(b)(6) motion to dismiss, such a combination results in too thin a case to meet the relatively strict standard for preliminary injunctions the Fourth Circuit has articulated in *Real Truth About Obama*.  Without more factual support, this court cannot find that Allstate has clearly shown a likelihood of success on the merits.[7]

---

[7] In its reply brief, Allstate contends its case for a preliminary injunction is strengthened by Ms. Warns's statements in her declaration that she did not believe she learned any privileged information during her employment, and if she learned any confidential or proprietary information, she was not aware of it.  (ECF No. 19, at 2.)  Allstate attached nearly two dozen documents to its reply brief demonstrating Ms. Warns had been a recipient of many communications from attorneys regarding pending cases.  Allstate contends Ms. Warns's denial of access to confidential information therefore "undermines the credibility of her claims she has shared none with the attorneys at Bennett & Albright." (*Id.*)  The statement to which Allstate refers appears in the context of a discussion of Allstate business practices, such as the "reserve" amount the company placed on lead paint cases.  Ms. Warns does not appear to be applying the term to suggest she never had access to information that might have been covered by attorney-client privilege.  In fact, in other places in her declaration Ms. Warns admits she did have access to other types of confidential information.  For example, she suggests she had access to "secret and confidential" information

Where a plaintiff has not met her burden of demonstrating likelihood of success on the merits, the court "need not reach the merits of the parties' arguments concerning the remaining three *Obama* factors." *Dewhurst v. Century Aluminum Co.*, 731 F. Supp. 2d 506, 521 n.23 (S.D. W.Va. 2010), *aff'd*, 649 F.3d 287 (4th Cir. 2011). As a result, the court will not now consider the likelihood of irreparable harm, the balancing of the equities, or the public interest. As appropriate, these factors may be addressed at a later date with regard to permanent injunctive relief.

### D. Motion to Seal

Allstate has requested that the court seal the majority of the documents it has filed in this case, including the complaint, the memorandum of law supporting Allstate's request for a preliminary injunction, Allstate's reply brief in support of its motion for preliminary injunction, and Allstate's memorandum of law in opposition to Ms. Warns's motion to dismiss. Allstate has also requested that the court order Ms. Warns to file a redacted version of her declaration and her brief in opposition to the motion for a preliminary injunction.

Local Rule 105.11 requires that a party seeking to seal documents offer reasons supported by specific factual representations justifying the sealing and an explanation for "why alternatives to sealing would not provide sufficient protection." Local Rule 105.11 (D. Md. 2011); *see Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 120–21 (D. Md. 2009). In evaluating a motion to seal, the court must weigh the right of public access, which "derives from two independent sources: the common law and the First Amendment." *Va. Dep't of State Police v.*

during settlement negotiations, which she never revealed without authorization. (Warns Decl. ¶ 16, ECF No. 14, Attach. 1, at 4.) The court therefore does not read Ms. Warns's discussion of her access to confidential information to be disingenuous. Any superficial inconsistencies in Ms. Warns's testimony, at this stage, cannot substitute for sufficient evidence of her possession of confidential documents or intent to disclose confidential information.

*Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004).

"The common law presumes a right to inspect and copy 'all judicial records and documents,'" *id.* at 575 (quoting *Stone v. Univ. of Md. Medical Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)), although this presumption can be rebutted if "countervailing interests heavily outweigh the public interests in access." *Id.* (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–99 (1978) (identifying but not precisely delineating the contours of the common law right). Under this common law balancing analysis, "the party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." *Rushford*, 846 F.2d at 253.

The First Amendment, on the other hand, has been "extended only to particular judicial records and documents." *Stone*, 855 F.2d at 180. Where the First Amendment does apply, public access "may be denied only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Id.* (citing *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984)). The First Amendment standard is "more rigorous" than the common law standard. *Rushford*, 846 F.2d at 253. But, "[r]egardless of whether the right of access arises from the First Amendment or the common law, it 'may be abrogated only in unusual circumstances.'" *Va. Dep't of State Police*, 386 F.3d at 576 (quoting *Stone*, 855 F.2d at 182).

When presented with a request to seal judicial records or documents, the district court "must determine the source of the right of access with respect to each document," because "only then can it accurately weigh the competing interests at stake." *Stone*, 855 F.2d at 181. Here, the

29

documents at issue are the complaint and the briefs and attachments associated with unsuccessful motions for a preliminary injunction and to dismiss or for summary judgment.

The Fourth Circuit has extended the application of the First Amendment test to "dispositive" civil motions, such as a motion for summary judgment that is successful either in full or in part. *Rushford*, 846 F.2d at 252; *Va. Dep't of State Police*, 386 F.3d at 576. The Fourth Circuit has not determined whether documents related to a "non-dispositive civil motion" should be protected by the First Amendment, but has noted that civil proceedings are "traditionally open" and that "in some civil cases the public interest in access ... may be as strong as, or stronger than, in most criminal cases." *Va. Dep't of State Police*, 386 F.3d at 580 (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 386 n.15 (1979)).

The court has noted above that a successful preliminary injunction here could have the effect of a final judgment for Ms. Warns. As a result, the court believes that the more rigorous First Amendment standard for dispositive civil motions should apply to Allstate's motions to seal. *See Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984) (applying the First Amendment standard to a motion to seal and other motions regarding an ultimately unsuccessful motion for a preliminary injunction). Nonetheless, the court here need not determine whether the First Amendment standard applies, because Allstate has not met its burden under either the common law or First Amendment standard. Even under the less rigorous common law standard, Allstate bears the burden of showing that its interest in confidentiality or some other significant interest outweighs the strong presumption of public access. *See Rushford*, 846 F.2d at 253; *Under Seal v. Under Seal*, 326 F.3d 479, 485–86 (4th Cir. 2003) (noting that "one of the established exceptions to the presumption of public access [is] ... where disclosure might reveal

30

trade secrets").

Allstate argues the documents in this case should be sealed because they contain information protected by attorney-client privilege and sensitive and confidential business information.  Ms. Warns has vigorously opposed the motions to seal and has exhaustively briefed her opposition.  She contends the documents at issue contain little more than allegations and legal arguments, and "nothing of substance that would in any way compromise any legitimate interests of Allstate."  (ECF No. 13, at 8.)  And, she notes, Allstate "has made no showing whatsoever that a less restrictive alternative, for example, would not serve its turn as to all of the documents that it asks the Court to seal."  (*Id*.)  Allstate, on the other hand, asserts Ms. Warns has no standing to oppose its motion to seal, citing *Pittston Co. v. U.S.*, 368 F.3d 385, 406 (4th Cir. 2004).

The court agrees with Ms. Warns that *Pittston* is rightly distinguished as a case in which documents produced by a third party in discovery had been previously sealed by a stipulated protective order, and one of the parties later moved to unseal, despite having signed the confidentiality order.  Where documents have not yet been sealed by court order, or have been temporarily sealed, the burden continues to be on the *movant*—here Allstate—to show why an interest in confidentiality outweighs the strong presumption of public access.[8]  Whether a party opposes the motion or not, the court considers whether the presumption of open access has been overcome.  *See, e.g., Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 455 F. Supp. 2d 399, 437–38 (D. Md. 2006) (denying a motion to seal even where neither party objected).  Thus, it is irrelevant whether Ms. Warns would have standing to move to unseal documents that had

---

[8] Furthermore, under the form of protective order approved in this District, a party who has signed the order can nonetheless challenge the confidential designation as to any particular document, in which case the party seeking continued protection retains the burden of justifying the seal.  Local Rule 104.13(b).

already been sealed.

Without addressing the question of whether underlying information at issue in this case is confidential, the court can confirm that the text of the documents filed with the court contain little, if any, confidential information.   The briefs and attached documents Allstate has filed contain only the most cursory description of the type of information to which Ms. Warns had access.   Nearly all of the attachments are already heavily redacted.   Indeed, Allstate acknowledges that it has already redacted the attached documents "to protect the [attorney-client] privilege and work product."  (ECF No. 22, at 2.)  As a result, most if not all of the information that Allstate now attempts to seal is not "on its face" confidential, nor has Allstate "offered the requisite 'specific factual representations' justifying secrecy."   *Minter*, 258 F.R.D. at 122 (denying a motion to seal in a civil case because the motion would fail both the constitutional and the common law standards).   Furthermore, Allstate has demonstrated to the court that redaction is a viable alternative.   In its motion to seal portions of Ms. Warns's filings, Allstate has provided proposed limited redactions of the monetary limits of Ms. Warns's settlement authority and alleged reserve amounts held by Allstate for each lead paint claim.  (ECF No. 24.).

Allstate's motions to seal, therefore, will be denied.   Allstate will be instructed to file proposed redacted versions of the documents at issue, together with the necessary specific factual representations justifying secrecy, including justification for the proposed redactions of Ms. Warns's declaration and her opposition brief.   "[C]ontinued designation of the challenged materials as confidential will be permitted only if [Allstate has] established with specificity that disclosure of the material will result in some kind of substantial harm" to their business, "and that that harm outweighs both the necessity of the material to dispositive motions practice in this

case and the traditional right to public access of judicial documents and records." *Waterkeeper Alliance, Inc. v. Alan & Kristin Hudson Farm*, --- F.R.D. ----, 2011 WL 5505393 at *5 (D. Md. 2011). The temporary seal will remain in place until the redacted versions are approved.

## **CONCLUSION**

For the reasons stated above, Ms. Warns's motion to dismiss, or for summary judgment will be granted as to punitive damages, but otherwise denied. Allstate's motion for a preliminary injunction will be denied. The motions to seal will be denied.

A separate order follows.

  February 29, 2012                         /s/              
Date                                                                Catherine C. Blake
                                                                    United States District Judge